## GUGLE, Plaintiff-Appellee v. GUGLE, Defendant-Appellant.

Ohio Appeals, Second District, Franklin County.

No. 3554.   Decided June 18, 1943.

James M. Butler, Columbus, and S. M. Isaac, Columbus, for plaintiff-appellee.

Horace S. Kerr, Columbus, Fred C. Rector, Columbus, for Frederick B. Gugle, defendant-appellant.

## OPINION

By GEIGER, J.

This is an action brought to this Court on appeal on questions of law, wherein it is sought to reverse the judgment of the Court below in granting to the plaintiff-appellee a divorce upon her petition filed in the Court of Domestic Relations in Franklin County.

The petition was filed on the 25th day of June, 1941, and recites the cause of action and prays for a divorce, with certain other incidental matters, on the ground of extreme cruelty and gross neglect of duty.

The substance of the petition is the allegation of residence and marriage between the plaintiff and defendant upon the 31st of December, 1935; the birth of two children, a boy and a girl, the boy at the time of the filing of the petition being aged four years and the girl two.

The petition alleges in substance that the defendant, in total disregard of his marital obligation has been guilty of extreme cruelty and gross neglect of duty toward the plaintiff almost continuously since their marriage; that defendant has mistreated plaintiff, both physically and mentally; has continuously criticized her and belittled her in the presence of their older child, whom he has taught to refuse to obey plaintiff; that he has without cause left plaintiff alone, and often at times when she most needed help; has refused to expend a normal effort to provide adequately for plaintiff and their

children; that through their married life he has been sullen, morose, abusive 'and contentious; has continually nagged plaintiff, called her lazy and insisted that as head of the home he should be obeyed without question, all in spite of every effort on the part of plaintiff to continuously conciliate him and make a good home for the parties and their children.

It is alleged that plaintiff was distressed by defendant's neglect and refusal to cooperate with his father's law office and practice.

It is alleged that throughout their married life and without regard for her wellbeing, he left the home in the evenings without notice to plaintiff and without disclosing his destination, remaining absent for an unpredictable length of time.

That he has criticized her for attendance on certain church services; that he continually threatened that if they separated he would remove the boy from her entirely and leave to her the girl, for whom he had but little affection. It is asserted that the plaintiff believed that it was dangerous for her and the children to longer remain with the defendant because of sudden ungovernable fits of temper and lack of self-control; that on the —— day of April, 1941, on account of the conditions stated she left their home with the children and has since refused to live with the defendant and will not hereafter live with him.

It is asserted that plaintiff fears that unless forbidden by the Court, the defendant will continue to interfere with plaintiff and will subject her to conferences and interviews in which he indulges in recriminations against her, without any recognition of his own shortcomings and his course of conduct that ruined the home life.

Plaintiff prays that she may be divorced from the defendant; that she be decreed reasonable alimony and be given the custody of the children, subject to his proper rights of visitation; that she may at her discretion be restored to her maiden name; that all property rights may be adjusted and settled and that she may be protected by order of the Court against his intrusions.

### THE ANSWER.

Defendant files an answer denying that he was guilty of extreme cruelty or gross neglect; denies that he has abused plaintiff either physically or mentally; denies that he has shown any indifference toward the younger child, or that he has belittled her in the presence of the elder child, and alleges that if plaintiff has no control of her own children it is her own fault.

He admits that he has charged her with being lazy and now avers that said statement is a fact.

The defendant further answers that plaintiff had no occasion for distress by reason of the manner in which he spent his time or performed his professional services; that so long as his work was done and his income received, it did not directly concern the plaintiff.

He denies that he criticized plaintiff for attending church services and alleges that he refused to accept the philosophy of the plaintiff's mother as wholly repugnant to him, her mother being a worker in the Christian Science Church.

### CROSS-PETITION.

For a cross-petition he alleges that the plaintiff has been guilty of gross neglect of duty and that during their entire married life she was selfish, self-centered and insufferably lazy and indolent, and had no other ambition than to become a social satellite, and that her every effort was along this line, in total disregard of the defendant and their children; that he was obliged to give much attention to the children, which rightfully was required of her as the mother; that by reason of the responsibilty imposed upon him in the care of the children he was caused to lose sleep and needed rest, which plaintiff did nothing to relieve, and that the plaintiff had always been selfish, with no regard for the rights of others; that her happiness and indulgence in luxury came first with her; that she was dominated by her mother, who, he alleges is possessed with a dual personality; that in the presence of strangers she assumes to be pleasant, but that intermeddling with the home of the defendant she was venomous and malicious; that the plaintiff's mother dominated her life. He alleges that the plaintiff was grossly extravagant and at the time of the marriage knew that the defendant possessed no property and that his resources were limited and that in spite of this knowledge she indulged in extravagant purchases of clothing without considering his ability to pay therefor; that she made no effort to aid him in saving any of his income; that her mother gave her money in addition to that given by the defendant, which she expended extravagantly and foolishly; that defendant wanted to live within his income and he regularly gave to plaintiff $150.00 a month which would have been adequate for her ordinary needs, and that he denied himself many luxuries of life while plaintiff was extravagantly spending the funds she received.

He alleges that in the spring of 1941 he had an opportunity to take a short vacation in Florida and invited plaintiff to accompany him, but she refused; that there had been up to that time no serious difficulty between the plaintiff and the defendant and that while he was in Florida the plaintiff wrote him affectionate letters, calculated to deceive him and that without any notice she removed with her daughter to the home of her parents and she and her mother raided the home of the defendant and removed many valuable articles in which the defendant had an interest; that upon his return from Florida with the infant son, he found the house emptied and alleges that its abandonment was without cause or provocation, but due to the persuasion and influence of plaintiff's mother. He asserts that by reason of her indolence she neglected the care of the children; that at the time the plaintiff abandoned him she had in her possession sixty pairs of shoes, costing $21.00 per pair, and that her other extravagances were along the same line. He makes allegation about the effort of the plaintiff's mother to force her philosophy upon the defendant and alleges that because he would not adopt the same her mother constantly interferred in his household affairs.

He alleges that the plaintiff will soon receive a legacy of approximately $9,000.00 from a certain estate and that upon the death of her parents the plaintiff will receive a legacy of $100,000.00, if she survives them. He prays that the defendant be denied temporary alimony and that upon the final hearing the petition be dismissed; that the defendant be awarded a decree of divorce from plaintiff and partial control of the children, on the ground of gross neglect of duty.

Without further commenting upon this cross-petition, we at once sustain the Court below in its refusal to grant him the divorce upon the allegations of his cross-petition, on account of lack of proof of their truth.

This Court must ever keep in view the fact that we are not trying this divorce case, but are here to determine whether or not the Court below committed error in granting the divorce to the wife and refusing to grant his cross-petition.

There have been many opinions as to the duty of the reviewing Court in divorce cases. We will refer to none other than by our own Court, and to these only briefly: **Hawker v Hawker**, (Jan. 1, 1933), **14 Abs 113:**

"1. The findings and judgment of a lower court in a divorce action will not be disturbed unless they are clearly

against the manifest weight of the evidence; a mere difference of opinion between the reviewing court and the trial court does not warrant the reversal."

**Schaeffer v Schaeffer,** (1939), **29 Abs 40,** opinion by Geiger, J.:

"A divorce granted to a husband for gross neglect and extreme cruelty will not be disturbed on review, as the trial court is in a much better position to appreciate the background and to determine whether the necessary facts have been established. * *. *""

**Weller v Weller,** (1942), **35 Abs 631,** opinion by Barnes, J.:

"The reviewing court has no authority to disturb the factual findings of the trial court unless the court's determination was so manifestly against the weight of the evidence as to shock the conscience if permitted to stand, and in considering this question, the reviewing court must always take into consideration that the trial court had the advantage of seeing and hearing the witnesses."

With these well-established principles long adhered to by this Court and other reviewing Courts, we examine the evidence.

At the request of the defendant, the Court made certain findings of fact which we may briefly analyze:

(A)  The Court finds that the indolence of the defendant in refusing to arise at a proper hour necessitated his office frequently calling upon the wife, who attempted to protect him by giving a favorable explanation of his failure to come to the office, and "that this was humiliating to the wife and was neglectful on the part of the defendant to his business."

(B)  "The Court finds that upon numerous occasions the defendant failed to keep appointments with the plaintiff by not being regular at arriving at home for his meals," and neglecting to be at home during the evening.

(C)  "That the defendant spent a number of evenings away from home at beer parlors and other places causing the wife to worry and be fearful as a result of his absence, all to his neglect of his wife."

(D)   The Court finds in substance that the defendant discouraged, rather than encouraged, the plaintiff to attend church, and that the defendant was indifferent to the wishes of the plaintiff in attending church.

(E)   That the defendant was not considerate of the plaintiff's parents.

(F)   That the defendant was overbearing in his manner toward the plaintiff, found fault with her, criticized her as to her ability to work, cook, or properly care for their home or children.

(G)   The Court finds that the defendant expressed resentment at the plaintiff receiving gifts or help from her parents and charged her with being lazy, selfish and neglectful.

(H)   That on numerous occasions the plaintiff was disappointed, embarrassed, belittled in the eyes of her friends and had her feelings hurt because of his conduct.

(I)   The Court further states: "The Court finds that there were many individual acts of neglect of duty and extreme cruelty, many of which would not be grounds for divorce, but taken together, time after time, over the period of the married life of the parties, did establish in the mind of the plaintiff failure on the part of the defendant to love and honor her as he had promised in their marriage vows."

(J)   "The evidence in this case also shows an actual physical act of extreme cruelty on the part of the defendant. While that alone may not constitute extreme cruelty, nevertheless, the constant bickering and intimidation on the part of the defendant over a period of time did create a mental condition of worry and fear to such an extent that extreme cruelty resulted therefrom."

The matter resolves itself finally to this:   Under the principles that we have announced as the decisions of this Court, this Court may not reverse the factual findings of the trial court unless the same have shocked our conscience.   However, we may say that even if we permit the facts to stand as shown in the separate findings of the Court as final, yet we must determine whether or not the facts so found constitute extreme cruelty or any gross neglect of duty.   We get a better view of this by reading the record, which establishes that two persons, married under rather favorable circumstances; the wife belonged to a family of some financial means and the husband, the son of a lawyer in practice in

the courts of Franklin county. For a time the matrimonial boat sailed on smooth waters, but in a short time squalls began to disturb the course of the married life which continued until they mounted at times to real tempests. There was no brutal beating of the wife by the husband, but there was a continual nagging and frequently emphasized criticisms of the wife's conduct to such an extent that a woman of sensibilities, could no longer tolerate the continuing discord incident to the defendant's conduct.

### LETTERS.

Much has been made by the defendant of the argument that in view of the letters written by the plaintiff-appellee showing deep affection for her husband for a period somewhat prior to the filing of her petition, she could not have been deeply incensed by the treatment which she afterwards alleges constitute extreme cruelty and furnish grounds for divorce. These letters are of interest and possibly throw some light upon their domestic relations, but are of such an intimate nature that we refrain from quoting. They were addressed to the husband from various points in the United States where she was visiting with her parents or was vacationing. We would not even cite these letters were it not for the insistence on the part of the defendant that their contents contradict her testimony. The letters are marked as exhibits, and are in the record and have been read and given proper consideration.

Defendant's Exhibit "C", from the husband to the wife, April, 1941, is a long formal and rather cold letter from the husband to the wife, the substance of which is chiding her for the action she had taken and the expressed desire upon his part that she put aside her own personal feelings and devote herself to the welfare of her children. In her testimony concerning this letter she complains that it was so formal and involved that she could not comprehend its purport.

### ACTION OF THE COURT.

This will be found as Appendix "C" of the brief on behalf of the wife. It is too long to quote from.

### DECREE.

This recites the fact that the defendant on June 1, 1942, filed a request with the Court stating in writing his conclusions of fact and law. The Court finds that the defendant has been guilty of gross neglect of duty and extreme cruelty as set forth in the separate findings of facts and law and that by reason thereof the plaintiff is entitled to a decree of divorce as prayed for in her petition, and it is ordered that the mar-

riage contract between the parties be dissolved and both parties released from the obligation of the same. The entry provides for the divided custody of the children and for support money of $50.00 per month and the division equally of $6114.35, proceeds of the sale of their former home. "This cause came on further to be heard upon the motion of the defendant for permission to amend his answer and include the defense of condonation and was submitted upon memoranda; upon due consideration the Court finds that there was no evidence of condonation and that said motion ought to be overruled, which is done". The motion for new trial was overruled, and the appeal was taken from that final order.

## CONDONATION.

The matter that has most troubled the Court in this case is whether there was error in overruling the motion of the defendant for leave to amend his answer setting up condonation. The answer did not plead that defense and the motion for leave to amend was not brought to the attention of the Court until after the decision had been filed, at least this is what appears from the record.

We have been cited to many cases touching the defense of condonation, including decisions of this Court of Appeals and from the Courts of other states, and textbooks. These cases will be found cited in the answer brief.

We will not go far afield in determining what the law may be in reference to condonation, but will content ourselves with the decision of this Court as the same is found in the case of **Winnard v Winnard, 62 Oh Ap 351**, opinion by Hornbeck, P. J., concurred in by Barnes and Geiger, JJ.

Syllabus 3:

"In a divorce action the defense of condonation is an affirmative one which must be specially pleaded."

On page 357, in the opinion of Hornbeck, J., will be found the following:

"Finally, we consider the defense of condonation. Upon a strict interpretation of the weight of authority it holds that condonation is an affirmative defense. If it had been pleaded, it clearly appears because on one or more occasions after the plaintiff had removed to Philadelphia his wife visited him at his room, stayed with him over night and slept in the same bed. Nothing which the defendant thereafter did could have re-

newed the original cause of action upon which the plaintiff grounded his petition."

As stated by the Court the motion to amend the answer was overruled because there was no evidence of condonation, and that "said motion ought to be overruled."

The record discloses the following evidence which defendant asserts is sufficient to entitle him to amend his answer. On page 496, 497, the defendant was inquired of as to the incident of January, 1941, which lead to her determination to seek a divorce. He explains the sleeping arrangements and that the husband and wife slept in different rooms. He testifies that after the incident and in January she came to his room a number of times, and that they indulged in marital relations which continued up until about two weeks before he went away in April. Relating to this time he was asked:

"Q. Had you had any argument? A. No, we had no difficulty at all after that evening in January; we had no arguments at all after that.

"Q. That, you are claiming, is evidence of condonation? A. Yes, sir."

On page 496 will appear an inquiry addressed to Mr. Gugle in reference to their marital relations after the first of January.

On page 176 Mrs. Gugle specifically denies that after she finally determined to leave her husband about the first day of January, 1940, that she had any marital relations with her husband prior to his leaving for Florida in April.

On page 680 she further testifies as to her marital relations. This is the only evidence that we have available in reference to condonation.

We are of the opinion that the Court did not commit prejudicial error in denying the defendant the right to amend his answer after trial, to include this defense.

On the whole, we discover no prejudicial error upon the part of the trial court, and the judgment of the Court below is affirmed.

BARNES, P. J., and HORNBECK, J., concur.